# Pitts *v.* Campbell, *et al.*

*Bill to Remove Settlement of an Estate from Probate to Chancery Court.*

(Decided May 17, 1911.　55 South. 500.)

1. *Wills; Construction.*—Where the performance of a condition subsequent in a will has become impossible, without any fault of the devisee, the condition will not be regarded as broken, in law and there will be no defeasance.

2. *Same.*—Where a testator left his wife his farm during her natural lifetime subject to certain limitations, with remainder over to all his nieces in equal parts, and succeeding item of the will provided that certain legacies to two of his nieces should be paid in cash out

of his estate, whether real or personal, except the land left to his wife during her natural life, and the will further provided, that it was the intention of the testator to give to the two nieces named a certain amount more than to his other nieces, it constituted a special devise of the farm properties, and such property was not chargeable with such legacies.

3. *Same; Gifts.*—A clear gift under a will is not to be cut down by anything which does not with reasonable certainty indicate an intention to cut it down.

4. *Executors and Administrators; Wills; Claims; Claimant.*—The personal property of the testator is the fund primarily for the discharge of debts and legacies, and they are not chargeable upon the land, unless the intention to so charge them is manifested by the express word, or by fair implication from the will, read in the light of the environments of the testator and his estate.

APPEAL from Madison Law and Equity Court.

Heard before Hon. TANCRED BETTS.

Bill by J. C. Goodrich and others, as executors of the last will and testament of J. N. Hairston to remove the settlement of the estate from the probate to the circuit court and for a construction of the will. From the decree rendered, Pearl Pitts, one of the devisees, appealed. Affirmed.

WALKER & SPRAGINS, for appellant. The cardinal rule in the construction of a will is to ascertain the intention of the testator and to give it effect.—*Campbell v. Weakley*, 121 Ala. 64; *Woolf v. Loeb*, 98 Ala. 426. The testator may by express direction charge a legacy upon the real estate.—*Davidson v. Coon*, 9 L. R. A. 584. The intention of a testator should not be defeated by a construction of the will which will result in defeating a preference plainly manifested.—*Gorman v. McDowell*, 127 Ala. 549; *Newsom v. Thornton*, 82 Ala. 402.

PARKER & PARKER, and PAUL SPEAKE, for appellee. A gift in clear and positive terms should not be cut down by later vague and doubtful language.—1 Underhill on Wills, Secs. 358 and 689; *Flynn v. Davis*, 18 Ala. 132; 115 Tenn. 46; 39 S. W. 16; *Newsom v. Thorn-*

*ton,* 82 Ala. 402. The grant of the farm lands was a specific devise, and therefore not chargeable with legacies.—97 Am. St. Rep. 743; 82 Pa. St. 213, and authorities supra.

SOMERVILLE, J.—The bill is filed by the executors of the last will and testament of J. N. Hairston, deceased, and seeks to remove the settlement of his estate from the probate court of Madison county into the law and equity court. It prays for a construction of certain clauses of the will, and that two legacies, in the sum of $5,000 each, the one to appellant and the other to her sister, be contingently charged on particular lands described in the will as the testator's farm, and devised to the widow of the testator for her life, with remainder over to his nieces generally, including the appellees.

The testator died February 28, 1908, leaving about $37,000 of personal estate, his farm homestead, worth about $20,000, and several town lots, worth about $400. In September, 1905, and August, 1906, he had sold parcels of real estate for an aggregate of $6,300. From these facts it is inferable that at the date of the execution of the will, July 1, 1905, his personal estate amounted to about $30,000, and his real estate, other than the farm, to about $6,500. The chancellor held that the farm property was specifically devised in item 2 of the will, and was not chargeable with the said legacies, and denied the prayer that they be sold for their satisfaction.

The material items of the will, so far as this inquiry is concerned, are as follows:

"Second   I give and bequeath to my beloved wife, Jincy Rebecca Hairston, my farm about two miles east of Huntsville, in Madison county, state of Alabama, to

[Pitts v. Campbell, et al.]

have and to hold during her natural life, provided she pays the taxes on the land when the taxes are due and payable, and if she fails to pay said taxes and the land is sold to pay said taxes, then the land shall revert back to my estate and be equally divided between my nieces living at the time of said sale, if they will redeem in the time required by law. If my wife keeps the taxes paid up, at the time of her death the said lands shall be divided equally among my nieces living at the death of my wife. I also give and bequeath to my beloved wife all the household and kitchen furniture, all of the farming tools, and work stock on the place, and all provisions and feed of whatever nature, either for man or beast, that is on the place, also the milk cows.

"Third, I give and bequeath to my two nieces, Jim Ruth Pitts and Pearl Pitts, the daughters of my sister, Pina Pitts, $5,000 each, to be paid to them in cash and to be paid out of my estate, either real or personal, except the lands left to my wife during her life. This $10,000 shall be over and above any of my other nieces and shall not be charged to Jim Ruth and Pearl in a division of my estate, but they shall share equally with my other nieces in the rest of my estate after the $10,000 has been paid, as it is my intention to give Jim Ruth Pitts $5,000 more than either of my other nieces, and to give Pearl Pitts $5,000 more than either of my other nieces.

"Fourth. All the rest and residue of my estate, real, personal and mixed, of which I shall die seised and possessed, or to which I shall be entitled at my decease, I give, devise and bequeath to be equally divided between all of my nieces living at the time of my death."

The widow, in the exercise of her statutory right, dissented from the will and was accorded dower and homestead out of the real estate, as well as all of the personal

estate of $37,000, as allowed to her by the statutes, leaving no personal estate and practically no real estate, except the farm, out of which the legacies could be satisfied.

The authorities hold to three propositions of vital importance in the construction of wills:

1. Where the performance of a condition subsequent in a will has become impossible, without any fault on the part of the devisee (the remaindermen here), the condition will not, in contemplation of law, be regarded as broken, and there will be no defeasance.—*Lynch v. Melton*, 150 N. C. 595, 64 S. E. 497, 27 L. R. A. (N. S.) 684; *County of New Haven v. Parish of Trinity Church*, 82 Conn. 378, 73 Atl. 789; 17 Am. & Eng. Ann. Cas. 432.

2. The personal property of the testator is the primary fund for the discharge of debts and legacies, and they are not chargeable on lands, unless the intention so to charge them is manifested by express words, or by fair implication from the provisions of the will, read in the light of the environment of the testator and his estate.—*Gorman v. McDonnell*, 127 Ala. 549, 554, 28 South. 964; *Newsom v. Thornton*, 82 Ala. 402, 8 South. 261, 60 Am. Rep. 743.

3. A clear gift is not to be cut down by anything which does not, with reasonable certainty, indicate an intention to cut it down.—30 A. & E. Ency. Law, 688, and cases cited; 1 Underhill on Wills, § 358.

Item 3 of the will provides that the two legacies in question are to be paid to the legatees "in cash and to be paid out of my estate, either real or personal, *except the lands left to my wife during her life.*" Item 2 had left to his wife the farm, which is here sought to be charged, "during her natural life," subject to certain limitations, with remainder over to all his nieces in equal parts. It seems reasonably clear to our minds that

[Pitts v. Campbell, et al.]

the exception noted in item 2 was intended to include, by the ordinary words of description used, the farm *as a whole,* and not merely the wife's *life estate therein;* in other words, the testator was pointing out by a natural and convenient descriptive phrase a definite body of land to be excepted from the charge of the legacies which he was at the same time imposing upon the rest of his estate. Without the aid of such an exception, this court has apparently approved the doctrine that the presumption is against an intention to charge lands already specifically devised, and that a mere charge on "all my lands" is not sufficient to rebut the presumption.—*Newsom v. Thornton,* 82 Ala. 402, 406, 8 South. 261, 60 Am. Rep. 743. And this we regard as a sound rule.

It is ingeniously and forcibly argued, however, that other language in item 3 shows that the testator intended that these two legacies should be chargeable upon the *remainder* interests of the other nieces in the farm property, in that the $10,000 given was to be "over and above any of my other nieces, and shall not be charged to Jim Ruth and Pearl in a division of my estate;" and "it is my intention to give Jim Ruth Pitts $5,000 more than either of my other nieces, and to give Pearl Pitts $5,000 more than either of my other nieces." The insistence is that this language shows that these two nieces were highly favored objects of the testator's bounty, and that the predominating purpose of the will was to give to them the specified excess at all hazards out of any and all of his estate, except the life interest in the farm given to the wife. It is undoubtedly true that, if such an intent must be attributed to these preferential clauses, then it would be our duty to give it full effect, even to the extent of striking down, if necessary, previous specified devises. But we think the language

is capable of a meaning which gives it a rational and appropriate field of operation consistently with the preservation of the specific devise already made—a result strongly favored by the principles of testamentary construction.

While the testator may have known that his widow could lawfully dissent from his will, there is nothing to show that he anticipated she would actually exercise this right. Hence the inference that he contemplated, and therefore intended, that these legacies should be satisfied from the personal property, which was ample for this purpose, and primarily liable in law; and his direction that they be paid out of his estate, either *real* or personal, may be reasonably referred to the other and substantial real estate then—when he made the will—presumably owned by him, and of the value of $6,000 or more, without necessarily involving the farm at all. This view is strengthened, we think, in the light of the testator's direction that the legacies should be paid in cash, and the strong improbability of his desiring or intending that a remainder interest should in any contingency be sold for that purpose—a proceeding that would be ordinarily both wasteful and unwise.

Keeping in mind that the testator's intention, as expressed in the language of the will, and as existing at the time of its execution, is the intention the court is required to gather from the four corners of the entire instrument, we are of the opinion that the conclusion reached by the chancellor was correct, and his decree is accordingly affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MCCLELLAN, JJ., concur.