Ruth L. McLean, L.A. McLean, Jr., and Louise McLean Wilson appeal from an interlocutory decree construing the last will and testament of Mollie Luke in favor of the plaintiffs, Marion Luke Brasfield, Lillian Luke McKenzie, and Jane Luke Boyett, who requested the sale of certain real estate and a division of the proceeds among the joint owners.
Mollie Luke of Sumter County, Alabama, died testate in 1926, and her will, with a codicil thereto, was admitted to probate on April 10, 1926. At the time of her death, Mollie Luke owned 421 acres located near Livingston, Alabama, which was devised by Item Two of her will. That land, called the Luke homeplace, is the subject of this lawsuit.
Mollie Luke was survived by six children. The names, with dates of death of those children who have died since the testatrix's death, are as follows:
 (1) Mary Clanton Luke, a daughter who never married, died on July 13, 1944.
 (2) Myrtle Luke, a daughter who never married, died February 1, 1948.
 (3) Nancy Luke, a daughter who never married, died on April 27, 1983.
 (4) James M. Luke, who died subsequent to the death of Myrtle Luke (1948), and prior to the death of Nancy Luke (1983), was survived by three daughters, Marion Luke Brasfield, Lillian Luke McKenzie and Jane Luke Boyett, the plaintiffs in this suit.
 (5) T.M. Luke, an unmarried son, died in 1966, subsequent to the death of Myrtle Luke and prior to the death of Nancy Luke.
 (6) Ruth Luke McLean, a married daughter, is now living, and one of the defendants in this suit.
Item Two of the will is composed of five sentences which, for convenience, are here separated and numbered:
 1. "I give, devise and bequeath unto my three daughters, Mary Clanton Luke, Myrtle Luke and Nancy Lillian Luke, *Page 155 equally, share and share alike, my homeplace and land situated about 1 1/2 miles West of Livingston on the Livingston/York public road, TO HAVE AND TO HOLD unto them for and during their natural lives or as long as they remain unmarried.
 2. "On the marriage of either of said daughters, her interest in said place shall immediately vest in the remaining unmarried daughters for the term of their natural lives or until they shall marry.
 3. "On the marriage of all three, then the property is to be divided among all of my children equally.
 4. "Should either of my said daughters not marry, she is to have the said property for and during her natural life and at her death, the property is to be equally divided among all my children.
 5. "If any of my children shall have died prior to that time leaving issue then the issue to take the part their parent should have taken if living."
(Emphasis added.)
On January 8, 1931, T.M. Luke executed and delivered a deed by which he conveyed any interest which he owned in the home-place to his three unmarried sisters, namely, Mary Clanton Luke, Myrtle Luke, and Nancy Luke. Mary Clanton Luke died testate. By her will she devised any interest which she owned in the homeplace to her two unmarried sisters, Myrtle Luke and Nancy Luke. Myrtle Luke died testate. By her will she devised any interest which she owned in the homeplace to her unmarried sister, Nancy L. Luke. Nancy L. Luke died testate. By her will she devised any interest which she owned in the homeplace to her niece, Louise McLean Wilson, and her nephew, L.A. McLean, Jr. L.A. McLean, Jr. is serving as executor of the estate of Nancy L. Luke, deceased. Louise McLean Wilson and L.A. McLean, Jr. are also defendants in this suit.
The plaintiffs claim an undivided one-half interest in the homeplace as children of James M. Luke. Ruth Luke McLean, surviving child of Mollie Luke and a defendant in this cause, claims an undivided one-sixth interest in the Luke homeplace under the terms of her mother's will. Louise McLean Wilson and L.A. McLean, Jr., the other defendants, each claim a one-third interest in the homeplace as devisees of Nancy L. Luke.
The question presented for review is whether under the will a remainder interest vested equally in all the testatrix's children at the time of her death, or whether the will bequeathed the homeplace equally to all her children alive atthe time of the death of the last unmarried daughter. In other words, were the remainder interests vested or contingent?
This case was submitted on stipulation of facts and briefs of the attorneys; therefore, no presumption of correctness as to findings of fact will be indulged on review, and it is this Court's duty to sit in judgment on the evidence. McCulloch v.Roberts, 292 Ala. 451, 296 So.2d 163 (1974).
The polestar to guide a court in the construction of a will is the intent of the testator and that intent should be determined by considering the instrument as a whole and not by construing any subpart separately. Greil Memorial Hospital v.First Alabama Bank of Montgomery, 387 So.2d 778 (Ala. 1980). Also, "[u]nless the testator clearly expresses an intention to the contrary, remainders are construed as vesting at the earliest possible moment, generally the death of the testator."Zimmerman v. First National Bank of Birmingham, 348 So.2d 1359,1363 (Ala. 1977). It seems clear that the testatrix intended to make certain that her unmarried daughters had a homeplace while unmarried or until they died. The only question is whether she intended that upon the termination of the possessory interest of the unmarried daughters, only her children who were then living should share in the property.
In White v. Fowler, 245 Ala. 209, 16 So.2d 399 (1944), this Court addressed a similar situation: *Page 156 
 "[T]he only question before us is to determine the meaning of the last sentence in item three of the will in the following language: `And after the death or marriage of the last one of my daughters as herein above mentioned (that is, the three named as being then unmarried) then shall my estate both personal and real descend to my heirs in common.' At the time of the death of the last of three who were not then married, September 8, 1936, some of the other sisters had died and left heirs, but all six survived the testator. The question is whether the will vested a remainder in the sisters effective in interest at the time of the death of the testator, or whether such interest was contingent upon them being alive and an heir of the testator at the time the last of the three unmarried sisters should lose her prior possessory right. The court held that the remainder vested in all the six daughters at the time of the death of testator. In this we concur.
". . . .
 "We have here (we repeat) no provision for survivorship, expressed in the will. It provides for the testator's `heirs,' but not conditioned upon survival at any time. The will is that the testator's `heirs' are to have his property at the end of the preceding particular period."
245 Ala. at 210, 211, 16 So.2d at 400, 401.
We agree with the reasoning in White and believe that the remainder interests here were also vested. The testatrix in sentences three and four indicated that upon the death or marriage of all her unmarried daughters her property was to be divided among all of her children. The provisions of sentence three and four are not conditioned on the children's surviving until the possessory interest of the unmarried daughters terminates.
The provisions in sentence five, while admittedly not crystal clear, are consistent with the conclusion that the testatrix intended the remainder interests to vest immediately upon her death. As we read sentence five, we think the testatrix intended to make sure that if some of her children are not living at the time the possessory interest of the unmarried daughters terminates then the issue of a deceased child would take in the deceased child's place. We understand the significance of the term "if living" to be not an attempt to limit the passage of the estate to those children living when the possessory interest terminates, but an expression of the testatrix's intent that a deceased child's issue take the same as if the child were living. This interpretation is consistent with the intent expressed throughout the will that the testatrix sought to make special provisions for her unmarried daughters and when they no longer needed such special consideration that all her children should share in her estate.
Therefore, we conclude that the trial court erred in holding that the remainder interests were contingent.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
FAULKNER and EMBRY, JJ., dissent.